Crystal Foley (SBN 224627)
cfoley@simmonsfirm.com
**Simmons Hanly Conroy LLC**
100 N. Pacific Coast Highway
Suite 1350
Los Angeles, CA 90245
Phone: (310) 322-3555
Facsimile:  (310) 322-3655

Paul J. Hanly, Jr.
(*pro hac vice* to be submitted)
phanly@simmonsfirm.com
Mitchell M. Breit
(*pro hac vice* to be submitted)
mbreit@simmonsfirm.com
**Simmons Hanly Conroy LLC**
112 Madison Avenue
New York, NY 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949

Attorneys for Plaintiff          Additional Counsel on Signature
                                 Page

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DEVETA WHITE on behalf of herself and all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>NUTRIBULLET, LLC, HOMELAND HOUSEWARES, LLC,  CAPITAL BRANDS, LLC, and CAPITAL BRANDS DISTRIBUTION, LLC, | Case No.:  2:18-cv-5785<br><br>**CLASS ACTION COMPLAINT<br>DEMAND FOR JURY TRIAL** |

1

Defendants.

## **INTRODUCTION**

Plaintiff Deveta White ("Plaintiff") on behalf of herself and all others similarly situated, brings this action against Defendants NutriBullet, LLC, Homeland Housewares, LLC, Capital Brands, LLC, and Capital Brands Distribution, LLC (collectively "NutriBullet" or "Defendants"). Plaintiff's allegations herein are based upon personal knowledge as to her own acts and experiences in this matter, the investigation of counsel, and upon information and belief as to all other matters.

## I.    **SUMMARY OF CASE**

1.    At all times relevant to this action, Defendants designed, manufactured, marketed, distributed, warranted, and sold the NutriBullet blenders/nutrient extractors/food processors ("Blenders")[1] at issue in the State of California and throughout the United States.

---

[1] The NutriBullet products at issue have functions of blenders and foods processors and are marketed by NutriBullet as "nutrient extractors." For purposes of consistency, these NutriBullet products will be referenced herein as Blenders.

CLASS ACTION COMPLAINT

2.     The Blenders are defectively designed and manufactured, in that, the extremely fast-moving blade of the Blenders heat the contents of the sealed bullet-shaped canister, which can (and does) unexpectedly explode when being used in its normal and intended manner by consumers. Consumers use the Blenders without knowledge of the inherent risks. In a matter of seconds the fast-spinning blades can heat up its contents, such that if the Blender explodes, the user is at risk of severe burns and injuries requiring medical attention. The Blenders pose a safety risk to users as well as other people—including children—who may be in close proximity to the Blender when it explodes.

3.     NutriBullet has known of this Defect for years.

4.     Despite its knowledge, NutriBullet fails to warn its consumers that the product may explode posing a serious safety risk to users and any living thing in the proximity of the explosion.

5.     NutriBullet also has and continues to fraudulently conceal and intentionally fail to disclose the defective nature of the Blenders.

6.     NutriBullet has not issued a recall of the Blenders due to this issue.

7.     NutriBullet's conduct violates federal and state consumer protection and warranty laws.  On behalf of the Nationwide Class and the Statewide Classes that Plaintiff proposes to represent, Plaintiff seeks an award of damages and appropriate equitable relief, including an order enjoining NutriBullet from

3

CLASS ACTION COMPLAINT

continuing to sell these defective Blenders and requiring NutriBullet to disclose the Defect to current owners of the defective product(s) (defined below).

## II.    **<u>PARTIES</u>**

8.    Deveta White is a citizen and resident of Goose Creek, County of Berkeley, South Carolina.

9.    Defendant NutriBullet, LLC is a California domestic limited liability corporation with its principal place of business in Los Angeles, Los Angeles County, California. It is a wholly-owned subsidiary of Capital Brands, LLC.

10.    Defendant Homeland Housewares, LLC is a California limited liability corporation with its principal place of business in Los Angeles, Los Angeles County, California.

11.    Defendant Capital Brands, LLC is a California limited liability corporation with its principal place of business in Los Angeles, Los Angeles County California.

12.    Defendant Capital Brands Distribution, LLC is a California limited liability corporation with its principal place of business in Los Angeles, Los Angeles County, California.

13.    According to public records, Leonard ("Lenny") Sands is a manager of each of the Defendant LLCs listed above. He resides in Los Angeles, California.

14.    According to public records, Colin Sapire is also a manager of each of

CLASS ACTION COMPLAINT

the Defendant LLCs listed above. He resides in Pacific Palisades, California.

### III.    <u>JURISDICTION AND VENUE</u>

15.    This Court has jurisdiction over this class action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least one hundred members of the proposed class(es). The aggregated claims of the individual Class Members exceed the sum value of $5,000,000.00, exclusive of interest and costs. And pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff and other members of the class of plaintiffs are citizens of different states than that of Defendants.

16.    This Court may exercise jurisdiction over NutriBullet, LLC because it is registered to conduct business in California - California Secretary of State Entity Number: 201130710231 - it has sufficient minimum contacts in California, and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

17.    This Court may exercise jurisdiction over Homeland Housewares, LLC because it is registered to conduct business in California - California Secretary of State Entity Number: 200322410074 - it has sufficient minimum contacts in California, and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

18.     This Court may exercise jurisdiction over Capital Brands, LLC because it is registered to conduct business in California - California Secretary of State Entity Number: 200913410249 - it has sufficient minimum contacts in California, and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

19.     This Court may exercise jurisdiction over Capital Brands Distribution, LLC because it is registered to conduct business in California - California Secretary of State Entity Number: 201520510030 - it has sufficient minimum contacts in California, and it intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary

20.     Subject-matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq*.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants transact business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's and proposed class members' claims occurred in this District. Additionally, Defendants distribute in this district, receive substantial compensation and profits from sales in this District, and have and continue to conceal and make material omissions in this District so as to subject them to *in*

CLASS ACTION COMPLAINT

*personam* jurisdiction in this District.

## IV.    SUBSTANTIVE ALLEGATIONS

22.    All NutriBullet blenders, including the one used by Plaintiff, essentially have three components: a powered base unit which contains a high-speed motor ("base"), a plastic cup-shaped container that holds ingredients to be blended ("canister"), and a plastic lid mounted with metal blades ("blade assembly"), which screws into the cup and is energized by the base.

|  *Figure 1*  |  *Figure 2*  |  *Figure 3*  |

  

23.    After the blade assembly is screwed onto the canister, the canister and the blade assembly are then inverted and pressed down into the power base, which initiates the cycling of the blades affixed to the lid. If the cup and blade assembly are twisted while on the power base, plastic tabs on the assembly will lock it in place on the power base, creating an open electrical circuit to allow the high speed motor to operate the blades. Twisting of the assembly in the opposite direction should bring the motor to a stop, release the assembly, and disengage the motor.

### A. The NutriBullet Nutrient Extractor

24.    NutriBullet is the successor to the original Magic Bullet upside-down

counter-top "nutrient extractor."

25.     The NutriBullet is a high-powered blender and/or food processor that is marketed as a "nutrient extractor" with "smart extraction technology":

> Nutrient extraction is the mechanism NutriBullet uses to break down fruits, vegetables, nuts, seeds, and other plant foods down to their most absorbable state.  Unlike juicers and blenders, NutriBullet nutrient extractors break down the cell walls of fibrous plant foods, releasing important vitamins and minerals contained within.  At the same time, they reduce beneficial fiber, pulp, seeds, and skins into smooth-as silk texture, delivering food to your body in an easily digestible form.  More than juicing, more than blending, and more than chewing, nutrient extraction allows you to receive the highest degree of nutrition your food has to offer.[2]

26.     NutriLiving.com houses the NutriBullet online store, where all models of NutriBullet Blenders, Superfood Blends protein powders, and accessories can be purchased.  NutriBullet sells several different models, each with varying wattage, capacity, weight, and prices ranging from $59.99 - $179.99.[3]

27.     Over 14 million NutriBullet units have been sold worldwide.

28.     According to a 2016 Forbes article, sales of the NutriBullet from 2012 to mid-2015 totaled 14 million units and the NutriBullet is the No. 1 best-selling

---

[2]     *See* https://nutribullet.com/?gclid=Cj0KEQjwmIrJBRCRmJ_x7KDo-9oBEiQAuUPKMhTYN61agN3xTmNki_5JvhoAgdU34b_90u9r60yekh8aAqsv8P8HAQ, last accessed June 19, 2018.

[3] *See* https://www.nutriliving.com/, last accessed June 19, 2018.

CLASS ACTION COMPLAINT

countertop blender on Amazon.com.[4]

29.   In addition to sales via Amazon.com and NutriLiving.com, the NutriBullet is sold at retailers, including Bed Bath & Beyond, Costco, J.C. Penney, Kohl's, Macy's, Sears, Target, and Wal-Mart.

30.   Defendants currently and/or did previously manufacture, market, and distribute the Blenders, including the Baby Bullet, MagicBullet, Magic Bullet Express, MagicBullet Mini, NutriBullet, NutriBullet Pro 900 Series, NutriBullet 1000, NutriBullet 1200, NutriBullet Balance, NutriBullet Lean, NutriBullet Max, NutriBullet NB-101, NutriBullet Prime, NutriBullet Pro Rx, NutriBullet Rx, NutriBullet Select; NutriBullet Sport, NutriBullet University Pro, Party Bullet, and Veggie Bullet.

31.   Below is a page from the NutriLiving.com website of NutriBullet's current catalog of Blenders:

---

[4] Atkins, Hunter, "Blender Battle: How NutriBullet Made Vitamix Step Up," *Forbes*, February 29, 2016 at page 3. /https://www.forbes.com/sites/hunteratkins/2016/02/29/blender-battle-how-nutribullet-made-vitamix-step-up/#49260bf86ac5, last accessed June 19, 2018.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



5

22    32.    The NutriBullet 900 model, the model Plaintiff purchased, is

23  substantially similar to other NutriBullet blenders that have been in the marketplace

24  since at least 2004, including the MagicBullet, MagicBullet Mini, NutriBullet Pro

25

26  5    *See*    https://www.nutriliving.com/shop/nutribullet-nutrient-extractors,    last
27  accessed June 19, 2018.

28

Rx, the NutriBullet Prime, NutriBullet Sport, NutriBullet University Pro, Baby Bullet, Veggie Bullet, Party Bullet, NutriBullet NB-101, NutriBullet Select, NutriBullet Lean, NutriBullet Max, NutriBullet Balance, NutriBullet 1000 and NutriBullet 1200.

33.    The Blenders are substantially similar in design and manufacturing.

34.    These Blenders all use a closed, sealed canister which has a blender/extractor-style blade.

35.    Some, if not all, of the Blenders are covered by the same patent family.

36.    The design, testing, analysis and complaints regarding defects and injuries arising from the NutriBullet 900 are substantially similar to the Blenders that have been in the marketplace for almost fifteen (15) years.

**B. The Warranties**

37.    NutriBullet offers a one-year written warranty on its products with the option to purchase an extended warranty.

38.    NutriBullet warrants that the Blenders will be free of defects in materials and workmanship for one year from the date of purchase.

39.    For example, the one-year limited warranty states that:

> At NutriBullet, LLC, we take pride in our products. We go out of our way to make products of superior quality and craftsmanship, products designed to meet or exceed the demands placed on them through everyday use. Because of this commitment to quality, we warrant the NutriBullet PRO to be free of defects for one full year (you may at your option extend this limited warranty for an additional 4 years by

11

purchasing an additional limited warranty which shall commence at the end of the one year term). Here's the deal: If your NutriBullet PRO stops operating to your satisfaction due to defects in materials or workmanship, we'll gladly repair it or replace it for free (excluding shipping and processing charges).[6]

40.    The written warranty is unconscionable and/or unenforceable.

41.    The Blenders are defective from the point of sale, thus, NutriBullet breaches its warranty that Blenders will be free of defects in materials and workmanship for at least the first year after the date of purchase.

42.    The disparity in bargaining power is great. NutriBullet controls what the warranty covers and how long it will last. It is a contract of adhesion. Plaintiff and Class Members have no meaningful choice or negotiating power with regard to the warranty. Plaintiff and Class Members must take-it or leave-it.

43.    The disparity is greater, given that NutriBullet knew of the Defect and did not disclose that information to Plaintiff or Class Members. Plaintiff and Class Members would not discover the Defect with reasonable diligence, unless the Defect manifested itself and at that time, it is too late.

44.    The written warranty is also unconscionable given its very limited duration.

45.    The time limits of NutriBullet's warranty are inadequate to protect Plaintiff and Class Members. Among other things, Plaintiff and Class Members had

[6] https://www.nutribullet.com/warranty, last accessed June 19. 2018.

CLASS ACTION COMPLAINT

no meaningful choice in determining the time limitation, the terms of which unreasonably favor NutriBullet. A gross disparity in bargaining power exists between NutriBullet and Class Members and NutriBullet knew or should have known that the Class Blenders were defective at the time of sale and would fail well before the end of the Blenders' useful lives.

46.     The written warranty is unconscionable as to particular terms. For example, the warranty explicitly states that it "is void if the product has been subject to accident."[7]

47.     The written warranty is unconscionable as it attempts to extensively limit remedies.

48.     NutriBullet's attempt to limit its express warranty in a manner that would result in placing its defectively designed Blenders with identical defective Blenders causes the warranty to fail its essential purpose and renders the warranty null and void.

49.     Additionally, the written warranty is unconscionable as it attempts to limit the implied warranties that accompany the sale of the Blenders.

50.     NutriBullet impliedly warrants that the Blenders are merchantable and safe for their intended purpose.

---

[7] *Id.*

13

CLASS ACTION COMPLAINT

51.     However, from the point of sale, the Blenders are not safe for their intended purpose due to the defective design and manufacture of the products. Without warning and with normal use, the Blenders may explode causing the contents of the canisters to spill and/or splatter. Given the intensity of the blades, the contents can and do reach high temperatures. Thus, when they make contact with skin, the result can be severe burns requiring medical attention.

52.     Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of those obligations as a result of NutriBullet's conduct described herein.

53.     Had Plaintiff or Class Members known of the Defect, had any bargaining power, and still decided to purchase a Blender, they would have negotiated for different terms under the warranty.

**C. The Defect**

54.     The Blenders have been manufactured such that consumers cannot safely use them in the intended manner without risk of the Blenders exploding which may result in physical injury or property damage.

55.     A user puts cool or room temperature food in the canister. Once the canister is secured to the blade assembly and inverted onto the base, the user is able to run the Blender. The blades rotate at a quick speed and cause the machine and its contents to heat up.

CLASS ACTION COMPLAINT

56.    In fact, NutriBullet warns that the Blender should not be used longer than 60 seconds at a time as the Blender is likely to overheat and cease working, as a safety feature should kick in.

57.    The contents added by the consumer are sealed within the canister and the speed of the blade causes the heat and pressure to build up within the canister, *even when used under 60 seconds as recommended*.

58.    The inside of the canister can pressurize to the point that the canister separates from the other part(s) of the Blender while the Blender is still running, causing the now hot contents of the Blender, as well as the parts of the Blender, to explode. The contents spew out onto anything and anyone in its proximity, which can (and sometimes does) cause severe burns to the user or others who are nearby.

59.    Even if the canister does not explode while the Blender is in use, the user is still at risk. The sealed canister pressurizes during the blending process, and if it has not exploded, the user may find the canister difficult to remove from the blade assembly lid. Once the user gets the lid to release, at times it shoots off the canister without warning. Again, when this occurs, it puts the user at risk of the flying blade and scalding hot contents spilling and burning the skin.

60.    The heating of the Blenders' contents and pressurization resulting in explosion constitutes the Blenders' defect ("Defect").  The Defendants' design and manufacturing of the Blenders with the Defect presents safety hazards to the

consumer in addition to making the Blenders unsuited and unsafe for their intended

purpose.

### D. Defendants' Knowledge of the Defect

61.    Defendants knew or should have known about the Defect prior to

Plaintiff's purchase, as the result of their knowledge of issues with earlier models,

similar products, receipt of prior customer complaints, prior lawsuits, and based

upon their own and third-party testing.

62.    Defendants knew or should have known of the Defect before Plaintiff

purchased her product because of similar risks associated with the Magic Bullet – a

blender substantially similar to the one Plaintiff purchased. In fact, the Magic Bullet

exists under the same family of patents as the Blender purchased by Plaintiff.

63.    In a report published on SaferProducts.gov in 2011, a Magic Bullet

consumer described injuries suffered while blending sweet potatoes in the Magic

Bullet blender. The consumer report stated that when the consumer began to unscrew

the lid off the Magic Bullet blender, the contents exploded in a six-foot radius around

the kitchen, causing burns and other injuries to the consumer. As set forth in the

report, this Magic Bullet blender consumer personally contacted Defendant

Homeland Housewares, LLC, and the parent company for Defendant NutriBullet,

LLC on October 20, 2011. The report was sent by Defendant Homeland

Housewares, LLC to the Consumer Product Safety Commission in October 2011.

CLASS ACTION COMPLAINT

64.    Consumers contacted NutriBullet directly to make them aware of their exploding, dangerous products at least as early as January 2013, as illustrated by the representative sample of public consumer complaints below:

**a.    January 24, 2013 Complaint to NutriBullet via FaceBook**

Explaining consumer's Blender exploded and oil went everywhere. Another Facebook user commented that the same thing happened to his mother and that explosion resulted in 3rd degree burns. The other Facebook user also noted that a NutriBullet exploded on another consumer in London.



CLASS ACTION COMPLAINT

### b.    March 20, 2013 Complaint to NutriBullet via FaceBook

Inquiring if she and her friend had gotten a bad batch of NutriBullets, because both of theirs exploded. NutriBullet responding and acknowledging receipt of the complaint.



**Margaret Mullin Hobbs ▶ NutriBullet** ✔

March 20, 2013 · 🌐                                    •••

just bought the nutribullet and it exploded everywhere than i learn a girlfriend of my had the same problem we both bought it from Candian Tire. Should we take it back I'm thinking its a bad batch?

---

2 Comments

👍 Like                💬 Comment              ↗ Share          🧑‍🦰 ▼

**Nancy Lundrigan Jackson** I would ..is Canadian tire good with returns? jeez. best of luck!

5y · Like

**NutriBullet** ✔ Margaret Mullin Hobbs, we have sent you a message. Please check the "Other" tab of your inbox to view it.

5y · Like

CLASS ACTION COMPLAINT

### c.    April 12, 2013 Complaint to NutriBullet via FaceBook

Reporting that under normal use, her canister exploded while the product was turned off spraying her smoothie all over her face and clothes. NutriBullet responding and acknowledging receipt of the complaint.



### d.  May 13, 2013 Complaint to NutriBullet via FaceBook

Complaining that after only one week of owning it, her NutriBullet overheated. NutriBullet responded explaining the safety features built-in in the event of overheating.



### e.    June 3, 2013 Complaint to NutriBullet via FaceBook

Describing how the canister had pressurized shut and when trying to remove the lid from the canister, it exploded. The pressure at which the lid exploded off the canister was so great that the user had soft tissue damage in her hand. She also had to go to urgent care after the incident. NutriBullet engaging in a dialogue with the consumer and acknowledging receipt of the complaint.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



### f.     September 14, 2013 Complaint to NutriBullet via FaceBook

Inquiring about an overheating issue with her product. NutriBullet responding and acknowledging receipt of the complaint.



**Jennifer Stead** ▸ **NutriBullet** ✔                                                ● ● ●

September 14, 2013 · 🌐

I've been getting a weird burning/melting smell, overheating under the blade and a weird, brown powdery residue leftover after I finish blending and remove the cup....who do I contact about this? I am really concerned....especially since I use my Nutribullet at least 2 times a day *L* I LOVE IT, and I'd hate for it to burst into flame or some silly thing..

                                                                                1 Comment

👍 **Like**                      💬 **Comment**                      ↗ **Share**          🔴 ▼

Oldest ▼

**NutriBullet** ✔ Hi Jennifer, we strongly suggest discontinuing use of the Extractor Blade until you contact Customer Service 855-346-8874 seven days a week 9am-8pm EST to troubleshoot your issue, they can also help with replacement orders.

Like · Reply · 4y

### g.    January 19, 2014 Complaint to NutriBullet via FaceBook

Complaining of explosion shortly after purchase. NutriBullet responding and acknowledging receipt of the complaint.

 **Kristi Salisbury Certain** ▸ **NutriBullet**                     •••

January 19, 2014 · 🌐

I got my NutriBullet on Christmas, tonight went to make a blast and it exploded. The rubber seal broke and ended up in bladt...burnt rubber no good. Who do I contact for warranty
Thanks!!

1 Comment

👍 **Like**              💬 **Comment**              ↪ **Share**          ▾

Oldest ▾

 **NutriBullet** ✓ We're sorry to hear that Kristi. Please contact Customer Service at 855-346-8874 for a replacement.

Like · Reply · 4y

24
CLASS ACTION COMPLAINT

### h.    February 19, 2014 Complaint to NutriBullet via FaceBook

Complaining that recently purchased product exploded causing property damage. NutriBullet responding and acknowledging receipt of the complaint.

 **Yesenia Gonzalez** ▸ **NutriBullet** ☑    •••

February 19, 2014 · 🌐

I purchased the nutribullet a few weeks ago and everything was going great until one of the cups exploded. The top flew up and hit the ceiling so hard that it made dents and the lid completely shattered. Do you have any explanations as to why this would happen?

2 Comments

👍 Like            💬 Comment            ↪ Share            🔴 ▾

Oldest ▾

View 1 more comment

**NutriBullet** ☑ Hi Yesenia, we've just sent you a message to your "Other" folder in your messages. https://www.facebook.com/help/188872764494245

👍 1

Like · Reply · 4y

CLASS ACTION COMPLAINT

### i.    September 22, 2014 Complaint to NutriBullet via FaceBook

Complaining that her product exploded while in use when being used under the recommended 60 seconds. NutriBullet responding and acknowledging receipt of the complaint.



I have contacted customer service via email and phone. I cannot get thru to a person and I cannot get a return call. The only email I ever receive is one stating that you got mine and not to return a message bc it wont be read. My nutribullet exploded on me. The plastic ring completely separated during a cycle, not even 10 seconds in. I want a replacement or a refund...and Id like someone to do something about it expediently.

65.    Additionally, there are numerous reviews on Amazon.com for NutriBullet blenders wherein the reviewer describers how the canister exploded during normal use, often spraying hot food product onto the user. These reviews and the incidents of explosion pre-date the explosion of Plaintiff's NutriBullet.

66.    Moreover, as least as early as May 2014, Defendants received complaints of dangerous explosions involving product defects, specifically over-pressurization of the canister in the NutriBullet NB 101, another product similar to

Plaintiff's.

67.     The over-pressurization occurred during the course of normal, foreseeable use by the consumers.

68.     Upon information and belief, Defendant documented these complaints in their internal databases, the contents of which are now available in public records. A sample of these complaints appear below:

a.      On May 5, 2014, a NutriBullet user in Oakdale, Pennsylvania reported to NutriBullet's customer service department that his machine exploded in his face when he was blending a smoothie of fruit, veggies, granola, juice, hemp protein, hemp seed, coconut oil and coconut water.

b.      On June 13, 2014, a NutriBullet user in Sebastian, Florida reported to NutriBullet's customer service department that her machine exploded when she was blending a smoothie of warm coffee with coconut oil, banana, peanut butter, cinnamon and ice.

c.      On June 13, 2014, a NutriBullet user in Baldwin, New York reported to NutriBullet's customer service department that her machine exploded when she was a smoothie of banana, mango, pineapple, orange juice, yogurt and berries.

d.      On July 15, 2014, a NutriBullet user in Roslyn, New York reported to NutriBullet's customer service department that the blade of their NutriBullet cut her hand.

e.      On August 20, 2014, a NutriBullet user in Commack, New York returned their NutriBullet for inspection because of product defects.

69.     In addition to the previous issue with the Magic Bullet and consumer

CLASS ACTION COMPLAINT

complaints about the NutriBullet, Defendant also knew or should have known of the Defect due to at least one prior lawsuit.

70.    On January 31, 2014, a NutriBullet user in Palmdale, California, filed a lawsuit against Defendant alleging that she suffered severe burns when her NutriBullet blender unexpectedly exploded on October 21, 2013. Defendant NutriBullet responded to the lawsuit and participated in the litigation, putting Defendants on notice of the risk of injuries of this type, caused by their products.

71.    Moreover, a previous issue with the same model Blender that Plaintiff purchased should have led Defendants to test and analyze the product, such that Defendants would have discovered, if they did not already know, the Blenders' serious safety risks to consumers as a result of the Defect.

72.    In July of 2014, Consumer Reports published the results of a strength and durability test of the NutriBullet Pro 900 (also known as the NutriBullet 900 Series) and recommended to consumers:  "Don't Buy: Safety Risk" and suggested owners stop using the Blender after a durability test resulted in cracked blades in two units.[8]  The testing was prompted by consumer complaints of NutriBullet Pro 900 blades breaking and falling off when processing ice in their Blenders.[9]

---

[8]*See*        https://www.consumer.org.nz/articles/appliance-life-expectancy#article-small-kitchen-appliances, last accessed June 19, 2018.
[9] *Id.*

CLASS ACTION COMPLAINT

73.     Consumer Reports notified NutriBullet of its safety concerns. In September of 2016, NutriBullet responded by stating that the machine is not a blender or an ice crusher and should not have been subjected to an ice-crush durability test and that crushing ice without the presence of water is a misuse of the product.[10]  NutriBullet made this response even though (1) there was no explicit warning against using ice without liquid in the owner's manual and (2) a NutriBullet Pro 900 infomercial stated that "even the toughest ingredients don't stand a chance."[11] In spite of the Consumer Reports' findings, NutriBullet never issued a notice, a retrofit repair campaign, a manual update, or a recall of the NutriBullet Pro 900.

74.     Similarly, NutriBullet has taken none of these actions in regard to this safety issue, despite knowledge of the Defect. By not undertaking any of these actions, Defendants consciously and knowingly disregard the safety of its users, including Plaintiff and class members, while continuing to collect profits from the sale of its dangerous and defective products worldwide.

75.     Instead of notifying, informing, or warning its customers of the potential risks, Defendants fraudulently conceal and intentionally fail to disclose to Plaintiff and class members the defective nature of the Blenders.

---

10 *Id.*

11 *Id.*

CLASS ACTION COMPLAINT

76.     Had Defendants informed Plaintiff and class members of the Defect, they would have declined to purchase the Blender, paid much less for it, and/or not used the Blender. As is, Plaintiff and class members did not receive the benefit of the bargain.

77.     The expected useful life of a blender has been studied and determined to be 10-25 years.[12]

78.     Based upon the above-referenced consumer complaints and on Plaintiff's experience, the Blenders miss the "expected useful life" ten-year mark by several years.

79.     Thus, even if severe physical injury was not a risk – which it is – Plaintiff and class members still would not receive the value of their bargain.

**E. The Advertising, Marketing, and Promotion**

80.     NutriBullet advertises, markets, and promotes the Blenders as high quality and safe.

81.     The advertising, marketing, and promotional material put out by Defendants does not disclose the Defect, nor do they provide any warning about the

---

[12] The Northwestern Controller's Office determined blender life at 10 years. *See* table at http://www.northwestern.edu/controller/accounting-services/equipment-inventory/index.html, last accessed June 19, 2018; the Broker Reciprocity Program of the Central New York Information Service, Inc. determined blender life expectancy to range from 15-25 years (2015), http://www.cnyhomes.com/Buyers/Useful/expect_int.cgi?num=11, last accessed on June 19, 2018.

CLASS ACTION COMPLAINT

overheating of the contents in a matter of seconds, the propensity for the Blenders to explode, or risk of physical injury or property damage that could result from the same.[13]

82.    Defendants claim in the advertising that "[t]he NutriBullet System is *built to last*, made from *quality construction*, and protected by a full one-year warranty."[14]

83.    NutriBullet claims that its "secret" is "its powerful 600 Watt motor combined with Bullet exclusive cyclonic action that forces everything through the turbo extractor blades turning at an incredible 10,000 RPM."[15] And it will upgrade you for a limited time to the NutriBullet Pro 900 Series which comes with a 900 Watt motor.[16]

## V.    PLAINTIFF'S EXPERIENCE

### Plaintiff Deveta White

84.    On approximately September 27, 2014, Keith Wilson, brother of

---

[13] *See* As Seen On TV Broadcast Commercial available at https://www.youtube.com/watch?v=hfWHl8xnxV8, last visited June 19, 2018; Facebook Advertising Video available at https://www.facebook.com/thenutribullet/, last visited June 19, 2018; YouTube Page Ad available at https://www.youtube.com/user/thenutribullet/featured, last visited June 19, 2018.
[14] *Id.*
[15] As Seen On TV Broadcast Commercial available at https://www.youtube.com/watch?v=hfWHl8xnxV8, last visited June 19, 2018.
[16] NutriBullet Infomercial available at https://www.nutribullet.com/watch-the-show, last visited June 19, 2018.

CLASS ACTION COMPLAINT

Plaintiff Deveta White, purchased a NutriBullet Pro 900 Series Blender from the NutriBullet website and gave it to Ms. White as a birthday gift. It was manufactured by Homeland Housewares, LLC, model number is NB-101B, serial number 23F507221409609.

85.    Below are photographs of Deveta White's Magic Bullet NutriBullet 900 Series unit:





CLASS ACTION COMPLAINT





86.     Ms. White was particularly excited by this brand and model because, according to its advertising campaign, use of the NutriBullet promotes weight loss.

87.     Approximately two years after purchase of her NutriBullet 900 Series Blender, Ms. White was blending water, walnuts, sea moss, and cinnamon. All the ingredients were cool or room temperature when Ms. White put them in the Blender.

88.     She ran the Blender for under 60 seconds, when it seemed as though something was strange with the seals on the Blender. Then, without warning, the

canister suddenly exploded.

89.    The explosion sent the mixed, and now extremely hot, ingredients flying.

90.    They sprayed onto her cabinets, walls, and ceiling.

91.    The hot mixture spewed onto Ms. White, damaging her clothing. But, more importantly, it got on her arms and chest causing her skin to burn and requiring her to seek medical treatment at Joseph M. Still Burn Centers, Inc. and Health First in Charleston, South Carolina.

92.    As a direct and proximate cause of Defendants' actions, Ms. White suffered harm.

93.    Ms. White suffered 2nd degree burns on her chest and 1st degree burns on her arms.

94.    She has incurred medical expenses in the amount of $5,750.00 to date.

95.    She had to deep clean her kitchen after the incident.

96.    Ms. White also missed work due to her injuries.

97.    Had NutriBullet adequately disclosed the Defect at the point of sale or otherwise, Deveta White's brother would not have purchased her Blender on her behalf, would have paid substantially less for it, or would have purchased a less expensive blender or food processor. Had NutriBullet disclosed the Defect, Ms. White would not have used the product or suffered physical injury. She did not

receive the benefit of the bargain for which the product was purchased.

## VI.    CLASS ACTION ALLEGATIONS

98.    Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf of herself and all others similarly situated as members of the following proposed Nationwide and Statewide Classes (collectively, the "Classes"), on their federal and state claims as purchasers ("Class Members").  "Class Blenders" include all NutriBullet Blenders manufactured from January 1, 2007 to present.  Plaintiff anticipates amending the definition of the Class Blenders following discovery conducted in this litigation.

    a.    **Nationwide Class:**
*During the fullest period allowed by law, all persons and entities residing in the United States, including its territories, who purchased or otherwise acquired a Class Blender primarily for personal, family, or household purposes and not for resale.*

    b.    **Statewide Classes:**
*During the fullest period allowed by law, all persons and entities residing in a particular State who purchased or otherwise acquired a Class Blender in that State primarily for personal, family, or household purposes and not for resale. For example, Plaintiff White would be a part of the South Carolina Statewide Class.*

99.    Excluded from the proposed class is NutriBullet; any affiliate, parent, or subsidiary of NutriBullet; any entity in which NutriBullet has a controlling interest; any officer, director, or employee of NutriBullet; any successor or assign of

NutriBullet; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff; and anyone who purchased a Class Blender for the purpose of resale.

100.    Members of the proposed classes are readily ascertainable because the class definitions are based upon objective criteria.

101.    **Numerosity**. NutriBullet sold many thousands of Class Blenders, including a substantial number in California. Members of the proposed classes likely number in the thousands and are thus too numerous to practically join in a single action. Class Members may be notified of the pendency of this action by mail, supplemented by public notice (if deemed necessary or appropriate by the Court).

102.    **Commonality and Predominance**. Common questions of law and fact exist as to all proposed members of the classes and predominate over questions affecting only individual class members. These common questions include:

a. Whether NutriBullet's Class Blenders were defectively designed, manufactured, marketed, distributed, and sold;

b. Whether the Class Blenders designed, manufactured, marketed, distributed, and sold by NutriBullet pose safety risks to consumers;

c. Whether NutriBullet knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

d. Whether NutriBullet concealed safety risks that the Class Blenders pose to consumers;

e. Whether the safety risks the Class Blenders pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a Blender;

f. Whether the Defect in the Class Blenders represent an unreasonable risk that Class Blenders explode and cause injury;

g. Whether NutriBullet failed to warn consumers that its Class Blenders pose serious safety issues at the point of sale and beyond;

h. When NutriBullet first became aware or should have become aware that its Class Blenders were defectively designed and/or manufactured;

i. Whether the existence of the Defect in the Class Blenders is a material fact that reasonable purchasers would have considered in deciding whether to purchase a blender, food processor, or "nutrient extractor";

j. Whether NutriBullet knowingly concealed the defective nature of the Class Blenders;

k. Whether NutriBullet intended that consumers be misled;

l. Whether NutriBullet intended that consumers rely on its non-disclosure of the Defect in the Class Blenders;

m.    Whether NutriBullet misrepresented the durability and usefulness of the Class Blenders;

n. Whether, by the misconduct set forth herein, NutriBullet violated consumer protection statutes and/or advertising statutes and/or state business practice statutes;

o. Whether the Class Blenders are of merchantable quality;

p. Whether, by the misconduct set forth herein, NutriBullet violated express and/or implied warranty statutes;

q. Whether NutriBullet's false and misleading statements of material facts regarding the Class Blenders were likely to deceive the public;

r. Whether consumers have suffered an ascertainable loss;

s. The nature and extent of damages and other remedies entitled to the Classes;

t. Whether the Class Blenders designed and manufactured by NutriBullet pose any material defects;

u. Whether NutriBullet knew, or should have known, that the Class Blenders are likely to fail before the end of their reasonable expected lives;

v. Whether the Class Blenders are likely to pose serious safety risks to consumers before the end of the Blenders' reasonable expected lives;

w.    Whether NutriBullet concealed the Defect from consumers;

x. Whether NutriBullet knew, or should have known, that the Class Blenders contained the Defect when they placed the Class Blenders into the stream of commerce;

y. Whether NutriBullet breached warranties relating to NutriBullet Class Blenders by failing to recall, replace, and/or correct the Defects;

z. Whether NutriBullet breached implied warranties of merchantability relating to Class Blenders;

aa.    Whether NutriBullet misrepresented the characteristics, qualities, and capabilities of the Class Blenders;

bb.    Whether NutriBullet omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiff and Class Members material information regarding the Defect at the point of sale and beyond;

cc.    Whether NutriBullet failed to warn consumers regarding the Defect in the Class Blenders;

dd.    Whether NutriBullet made fraudulent, false, deceptive, misleading, and/or otherwise unfair or deceptive statements, including the Class Blenders' safety issues, in connection with the sale of the Class Blenders in its blender/nutrient extractor literature and on its website, including those relating to standards, use, and reliability and otherwise engaged in unfair and deceptive trade practices pertaining to the Class Blenders at the point of sale and beyond;

ee.    Whether NutriBullet was unjustly enriched as a result of selling the Class Blenders;

ff. Whether the Class Blenders' Defect resulted from NutriBullet's negligence;

gg.    Whether NutriBullet's conduct, as alleged herein, violates the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.;*

CLASS ACTION COMPLAINT

hh.   Whether NutriBullet's conduct, as alleged herein, violates the consumer protection laws of California;

ii. Whether NutriBullet should be ordered to disgorge all or part of the profits received from the sale of the defective Class Blenders;

jj. Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and amount of such damages;

kk.   Whether Plaintiff and Class Members are entitled to equitable relief, including injunction requiring that NutriBullet engage in a corrective notice campaign, retrofit program, and/or a recall; and

ll. Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs.

103.   **Typicality**. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the members of the proposed classes all purchased and/or acquired Class Blenders that are inherently susceptible to exploding — giving rise to substantially the same claims. As illustrated by Class Member complaints, some of which have been excerpted above, each Class Blender included in the proposed class definitions suffers from the same or substantially similar defect.

104.   **Adequacy**. Plaintiff is an adequate representative of the proposed classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and will prosecute vigorously on Class Members' behalf.

105.   **Superiority**. A class action is superior to other available means for the

CLASS ACTION COMPLAINT

fair and efficient adjudication of this dispute. The injury and damages suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against NutriBullet economically feasible. Even if Class Members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the defective Class Blenders, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

106.   In the alternative, the proposed classes may be certified because:

a.   the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for NutriBullet;

b.   the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.   NutriBullet has acted or refused to act on grounds generally

CLASS ACTION COMPLAINT

applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

## VII.  TOLLING OF THE STATUTES OF LIMITATIONS

107.  **Discovery Rule**. Plaintiff's claims accrued upon discovery that her Class Blender was defective in that these types of Blenders are manufactured in a way that causes them to overheat and/or explode, which, in turn, results in a complete loss of value of the Blender. While NutriBullet knew and concealed the fact that Class Blenders have the Defect, Plaintiff and Class Members could not and did not discover this fact through reasonable diligent investigation until after they experienced such Blender explosions first-hand. NutriBullet still claims its Blenders are safe and structurally sound and concealed and conceals from Plaintiff and Class Members that the Class Blenders are defective.

108.  **Active Concealment Tolling**. Any statutes of limitations are tolled by NutriBullet's knowing and active concealment of the fact that the Class Blenders suffered from an inherent defect. NutriBullet kept Plaintiff and Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff or the proposed classes. The details of NutriBullet's efforts to conceal its unlawful conduct are in its sole possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff and Class Members could not have reasonably discovered the fact that their Class

Blenders were defective.

109.   **Estoppel**. NutriBullet was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Defect of the Class Blenders. At all relevant times, and continuing to this day, NutriBullet knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Class Blenders. The details of NutriBullet's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. Plaintiff reasonably relied upon NutriBullet's knowing, affirmative, and/or active concealment and affirmative misrepresentations. Based on the foregoing, NutriBullet is estopped from relying on any statutes of limitation in defense of this action.

110.   **Equitable Tolling**. NutriBullet took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, and sold defective, exploding Class Blenders. The details of NutriBullet's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class Members. When Plaintiff learned about this material information, she exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing her claims. NutriBullet fraudulently concealed its above-described wrongful acts. Should such

CLASS ACTION COMPLAINT

tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## VIII.  <u>CLAIMS FOR RELIF</u>

### <u>COUNT I</u>
**Negligence**
**(Plaintiff individually and on behalf of the Statewide Classes)**

111.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

112.    At all times relevant to this action, Defendants had a duty to exercise reasonable care and to comply with existing standards of care, in preparation, design, development, formulation, manufacture, testing, packaging, promotion, labeling, advertising, marketing, instruction of use, warning about distribution, supply and/or sale of the Blenders which Defendants introduced into the stream of commerce to be used as household items for personal use.

113.    Defendants had a duty to ensure that product users would not suffer from unreasonable, dangerous adverse events while using the machine in its normal, intended, and/or foreseeable manner(s).

114.    Defendants had a duty to ensure that a consumer's use of a Blender would not significantly increase their risk of bodily harm and adverse events.

115.    Defendants breached one or more duties to Plaintiff and Class Members.

CLASS ACTION COMPLAINT

116.   Defendants knew or reasonably should have known that their Blenders were unreasonably dangerous and defective when utilized for their intended and/or foreseeable use and purpose, including but not limited to the following particulars: a) reasonably foreseeable operation of the Blender causes its contents to heat up to the extent that it poses a danger to anyone around if/when the ultra-heated contents spews out under circumstances such as the ones described in this Complaint; b) the blade assembly operates even when the canister is not locked into the base, causing unexpected rotation of the blade and potential harm to consumers; and c) the warnings and labels on the Blenders and the user manual(s), if any at all, are inadequate to alert the consumer of the dangers of using a Blender.

117.   Defendants knew or reasonably should have known that the Blenders were unreasonably dangerous and defective when used for their intended purpose in normal, reasonable, and/or foreseeable ways.

118.   Defendants knew or reasonably should have known that Plaintiff, being among foreseeable users who could be exposed to harm, would foreseeably suffer injury as a result of Defendants' failure to exercise reasonable care.

119.  Defendants failed to modify or otherwise retrofit the Blenders, including making them safe for use, and otherwise failed to warn consumers of the dangers which Defendants knew or should have known existed to consumers or to anyone who may use the Blender. This failure is ongoing.

CLASS ACTION COMPLAINT

120.  The likelihood and gravity of the harm presented by the Blenders outweigh the utility of the design of the product.

121.  The Defect alleged herein is a substantial factor contributing to the cause of injuries and damages suffered by Plaintiff and Class Members.

122.   As a direct and proximate result of NutriBullet's conduct, Plaintiff and the other Class Members bought and/or used Blenders they otherwise would not have, overpaid for their Blenders, did not receive the benefit of the bargain, and/or suffered a diminution in value of the Blender, among other injuries.

123.  As a direct and proximate cause of Defendants' negligence, Plaintiff and Class Members suffered, and will continue to suffer, harm, including but not limited to, burns, medical expenses, physical scarring, loss of past and future earnings, severe emotional distress and anxiety, general damages, and other economic and non-economic damages in an amount to be proven at trial.

## COUNT II
### Implied Warranty of Merchantability
### (Plaintiff individually and on behalf of the Statewide Classes)

124.  Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

125.   The implied warranty of merchantability included with the sale of each Class Blender means that NutriBullet warranted that the Class Blenders would be merchantable, fit for their ordinary purposes for which blenders are used, pass

CLASS ACTION COMPLAINT

without objection in the trade, be of fair and average quality, and conform to promises and affirmations of fact made by NutriBullet.

126.   This implied warranty of merchantability is part of the basis for the benefit of the bargain between NutriBullet and consumers.

127.   At the point of sale, however, NutriBullet breached the implied warranty of merchantability because its Class Blenders were defective as alleged herein, would not pass without objection, were not fit for normal use, and failed to conform to the standard of like products in the trade.

128.   The Class Blenders would not pass without objection in marketing, warranties, and other NutriBullet statements regarding the product's features, quality, safety, and use because the Blenders are inherently defective in that they have a propensity to overheat and/or explode during normal use, making them unfit for the ordinary purpose for which the Class Blenders are normally used.

129.   The Class Blenders are not adequately labeled because their labeling fails to disclose the Blender's propensity to explode and does not advise Plaintiff or Class Members of the existence of the Defect.

130.   These Class Blenders, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which they are used.

131.   The element of privity, if applicable here, exists because Plaintiff's

CLASS ACTION COMPLAINT

Blender was purchased directly from NutriBullet. Moreover, NutriBullet had direct written communications with Plaintiff and Class Members regarding their Class Blenders in the form of warranties, manuals, communications regarding defect failures, or similar documents. NutriBullet advertised the Class Blenders via direct communications with Plaintiff and Class Members through television, internet, magazine advertisements, and the like. NutriBullet entered into contracts with Plaintiff and Class Members through warranties, including extended warranties; and Plaintiff and Class Members are third-party beneficiaries of warranties that ran from NutriBullet to their other sellers. Further, NutriBullet designed and manufactured the Class Blenders, intending Plaintiff and Class Members to be the ultimate users – not retailers or other third-party sellers.

132. NutriBullet knew or, in the exercise of reasonable care, should have known that the Class Blenders were defective prior to sale.

133. Any implied warranty limitation cannot be enforced here because the warranty is unconscionable. For example, a substantial disparity in the parties' relative bargaining power existed such that Plaintiff and class members were unable to derive a substantial benefit from their warranties. A disparity existed because NutriBullet was aware that the Class Blenders were inherently defective; Plaintiff and Class Members had no notice or ability to detect the problem; and NutriBullet knew that Plaintiff and Class Members had no notice or ability to detect the problem.

CLASS ACTION COMPLAINT

134. NutriBullet's actions have deprived Plaintiff and Class Members of the benefit of the bargains associated with purchase and have caused Class Blenders to be worth less than what was paid for them.

135. As a direct and proximate result of NutriBullet's conduct as described herein, Plaintiff and Class Members received defective Blenders. Plaintiff and Class Members have been damaged by the diminished value of their Class Blenders, suffered physical harm, and have been injured in other ways.

136. Plaintiff and Class Members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of Class Blenders or the overpayment or diminution in value of their Class Blenders. They are also entitled to all incidental and consequential damages resulting from NutriBullet's conduct, as well as reasonable attorneys' fees and costs.

**COUNT III**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §
2301,** *et seq.*
**(Plaintiff individually and on behalf of the Nationwide Class and,
alternatively, on behalf of the Statewide Classes)**

137. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

138. The Magnuson-Moss Warranty Act, 15 U.S.C. §2301(d)(1), provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

139.    Plaintiff and Class Members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

140.    NutriBullet is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301(4)-(5).

141.    Class Blenders are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

142.    NutriBullet provided a written warranty for each Class Blender. NutriBullet's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Blenders' implied warranties are covered under 15 U.S.C. §2301(7).

143.    NutriBullet breached the warranties, at least, by breaching its implied warranty of merchantability as described herein.

144.    Plaintiff and Class Members own Class Blenders that experienced the Defect during the period of warranty coverage or, if outside the warranty period, the incident was reasonably foreseeable and NutriBullet is liable given that its express warranty is unconscionable for at least the reasons described herein, including duration of the warranty.

145.    NutriBullet's breach of warranty(ies) deprived Plaintiff and Class Members of the benefit of the bargain.

146.    Plaintiff's Class Blender was purchased directly from NutriBullet.

147.   Both Plaintiff and Class Members have had sufficient dealings with either NutriBullet or its representatives and agents to establish any required privity of contract. Nonetheless, privity is not required because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between NutriBullet and any sellers and specifically of NutriBullet's express and implied warranties.  Sellers are not intended to be the ultimate consumers of the Class Blenders and have no rights under the warranty agreements with regard to the Class Blenders. The warranty agreements were designed for and intended to benefit the consumers only.

148.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

149.   NutriBullet has been afforded a reasonable opportunity to cure its breach of warranty(ies), and or such opportunity is unnecessary because it would be futile.

150.   Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have all sufficiently notified NutriBullet, thus providing NutriBullet with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA.

151.   NutriBullet has not cured the breach of warranty(ies) described above.

152.   Resorting to any informal dispute settlement procedure or affording NutriBullet another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as NutriBullet has repeatedly failed to disclose the Defect or provide repairs at no cost and, therefore, has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford NutriBullet a reasonable opportunity to cure its breach of warranty(ies) is excused and/or has been satisfied.

153.   As a direct and proximate result of NutriBullet's breach of warranty(ies), Plaintiff and Class Members sustained damages and other losses to be determined at trial. NutriBullet's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT IV
### Unjust Enrichment
**(Plaintiff individually and on behalf of the Nationwide Class, and alternatively, on behalf of the Statewide Classes)**

154.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

155.   As described above, NutriBullet sold Class Blenders to Plaintiff and

CLASS ACTION COMPLAINT

Class Members even though they were defective, had a propensity to overheat and/or explode, and posed a safety hazard. NutriBullet failed to disclose its knowledge of the Defect and the Defect's attendant risks – at the point of sale or otherwise.

156.    As a result of Defendants' acts and omissions related to the defective Blenders, NutriBullet obtained monies that rightfully belong to Plaintiff and Class Members.

157.    NutriBullet appreciated, accepted, and retained the non-gratuitous benefits conferred by or on behalf of Plaintiff and Class Members who, without knowledge of the Defect, paid a higher price for their Blenders than those Blenders were worth. NutriBullet also received monies for Class Blenders that Plaintiff and Class Members would not have otherwise purchased and/or used had they been aware of the Defect.

158.    It would be inequitable and unjust for NutriBullet to retain such wrongfully obtained profits.

159.    NutriBullet's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

**COUNT V**
**Violation of the Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(Plaintiff individually and on behalf of the Nationwide Class)**

160.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT

161.   NutriBullet has violated and continues to violate California's UCL, Cal. Bus. & Prof. Code § 17200, et seq., which prohibits unlawful, unfair, and fraudulent business acts or practices.

162.   California has an interest in regulating Defendants' conduct given, at least, that each Defendant is a California business, is registered to do business in California, has its principal place of business in California, and is managed by two citizens of California. Each Defendant's business is run, managed, and operated out of California. Upon information and belief, the Blenders are manufactured in California, advertising and marketing decisions are made in California, the relevant websites are operated from California, Blenders purchased online from the NutriLiving website are distributed from California, warranties offered with the Blenders are written and/or finalized in California, and relevant business decisions occur in California. The conduct giving rise to Defendants' liability occurs in California.

163.   NutriBullet's acts and practices, alleged in this complaint, constitute unlawful, unfair, and/or fraudulent business practices, in violation of the UCL.

164.   In particular, NutriBullet advertised, represented, warranted, and sold Class Blenders to Plaintiff and Class Members as safe products, even though NutriBullet knew of the defective nature of the Blenders – in that they have a propensity to overheat and/or explode and pose a safety hazard – and failed to

disclose its knowledge of the Defect and the attendant risks of the Defect at the point of sale or otherwise.

165. NutriBullet's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, NutriBullet knowingly concealed, continues to conceal, failed, and continues to fail to disclose at the point of sale and otherwise that Class Blenders' have a propensity to overheat and/or explode—endangering the personal safety of consumers and those around them. Had NutriBullet disclosed that information, Plaintiff and Class Members would not have purchased or used Class Blenders or would have paid significantly less for them.

166. NutriBullet's conduct also constitutes unfair business practices for at least the following reasons:

    a. The gravity of potential harm to Plaintiff and Class Members as a result of NutriBullet's acts and practices far outweighs any legitimate utility of NutriBullet's conduct;

    b. NutriBullet's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class Members; and

    c. NutriBullet's conduct undermines or violates stated

CLASS ACTION COMPLAINT

policies underlying the UCL—to protect consumers against unfair business practices and to promote a basic level of honesty and reliability in the marketplace.

167. As a direct and proximate result of NutriBullet's business practices described herein, Plaintiff and Class Members suffered a foreseeable injury-in-fact and lost money or property because they purchased and paid for Class Blenders that, had they known of the Defect, they would not have purchased, would not have used or, in the alternative, they only would have purchased for a lower amount.

168. Plaintiff and Class Members are entitled to equitable relief, including an order directing NutriBullet to disclose the existence of the defects inherent in its Class Blenders and to provide restitution and disgorgement of all profits paid to NutriBullet as a result of its unfair, deceptive, and fraudulent practices, reasonable attorneys' fees and costs, and a permanent injunction enjoining such practices.

## COUNT VI
**Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, _et seq._**
**(Plaintiff individually and on behalf of the Nationwide Class)**

169. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

170. NutriBullet is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Cal. Civ. Code §§ 1761 (b) and 1770.

CLASS ACTION COMPLAINT

171.    Plaintiff and members of the proposed Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ 1761(d) and 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761 and 1770.

172.    NutriBullet's acts and practices, which were intended to result and which did result in the sale of the defective Class Blenders, violate the CLRA for at least the following reasons:

> a.  NutriBullet represents that its Blenders had characteristics, values, or benefits which they do not have;
>
> b.  NutriBullet advertises its goods with intent not to sell them as advertised;
>
> c.  NutriBullet represents that its Blenders are of a particular standard, quality, or grade when they are not;
>
> d.  NutriBullet represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and
>
> e.  NutriBullet represents that its goods have been supplied in accordance with a previous representation when they have not.

173.    As described herein, NutriBullet sold Blenders to Plaintiff and Class

56

CLASS ACTION COMPLAINT

Members even though the Class Blenders are defective and pose a safety hazard, and NutriBullet failed to disclose its knowledge of the Defect and further failed to disclose the attendant risks associated with the Defect at the point of sale or otherwise. NutriBullet intended that Plaintiff and Class Members rely on this omission in deciding to purchase their products. Plaintiff and Class Members did in fact rely on said omission.

174. Had NutriBullet adequately disclosed the Defect inherent in its Class Blenders, Plaintiff and Class Members would not have purchased or used their Class Blender or, in the alternative, they would have only been willing to pay less for their Class Blender.

175. Pursuant to the provisions of the CLRA, Plaintiff is providing notice of the Defect to NutriBullet and upon the expiration of the period described in Cal. Civ. Code Section 1782, subd. (d), Plaintiff will amend this Complaint to state a claim for damages under the CLRA.

## COUNT VII
### Negligent Failure to Warn
**(Plaintiff individually and on behalf of the Nationwide Class, and alternatively, on behalf of the Statewide Classes)**

176. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

177. At all relevant times, Defendants were in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market,

instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names. These products are intended for use as household blenders.

178.    Defendants placed the Blenders into the stream of commerce.

179.    Defendants knew or reasonably should have known that the Blenders were dangerous or were likely to be dangerous when used or misused in a reasonably foreseeable manner.

180.    Defendants knew that use of the Blenders created an increased risk of serious bodily harm to reasonably foreseeable consumers, including Plaintiff and Class Members.

181.    Defendants knew or reasonably should have known that Plaintiff and Class Members did not know and/or would not realize the danger posed by using the Blender until the Defect manifested itself and harm was done.

182.    Defendants failed to provide adequate safe-use instructions and/or adequate warnings to consumers despite Defendants' knowledge of the risks.

183.    Defendants knew about but failed to inform or warn their consumers of the risks of using the Blenders (*e.g.*, the product exploding and spewing the hot blended contents on anyone and anything within the surrounding proximity), thereby preventing consumers, including Plaintiff, from eliminating or reducing the risks.

CLASS ACTION COMPLAINT

184.    A reasonable manufacturer, distributor, and/or seller under the same or similar circumstances would have warned consumers of the danger and/or instructed on the safe use the Blenders.

185.    Plaintiff and Class Members suffered, and will continue to suffer, personal injuries, general damages, and other economic and non-economic damages in an amount to be proven at trial.

186.    NutiBullet's failure to warn and/or instruct on safe use was a substantial factor in causing injury to Plaintiff and Class Members.

## COUNT VIII
### Strict Product Liability – Manufacturing Defect
### (Plaintiff individually and on behalf of the Nationwide Class, and alternatively, on behalf of the Statewide Classes)

187.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

188.    At all relevant times, Defendants were in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names. These products are intended for use as household blenders.

189.    Defendants placed the Blenders into the stream of commerce.

190.    The Blenders contained a manufacturing defect at the time they left Defendants' possession. For example, unbeknownst to consumers, the Blenders over

heat the contents in the canister during normal use and explode causing harm to Plaintiff, Class Members, their belongings, and others.

191.   Plaintiff and Class Members were injured as a direct and proximate cause of the Defect.

## COUNT IX
### Strict Product Liability – Design Defect
**(Plaintiff individually and on behalf of the Nationwide Class, and alternatively, on behalf of the Statewide Classes)**

192.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

193.   At all relevant times, Defendants were in the business of and did design, develop, formulate, manufacture, test, package, promote, label, advertise, market, instruct on, warn about, distribute, supply and/or sell products and blenders marketed under the NutriBullet and MagicBullet brand names. These products are intended for use as household blenders.

194.   Defendants placed the Blenders into the stream of commerce.

195.   The Blenders contained a design defect at the time they left Defendants' possession. For example, the NutriBullet does not allow consumers to operate the Blenders safely during normal use. A reasonable consumer would not expect that she would be exposed to a risk of the Blender exploding during normal use; the blade assembly would propel off the base or separate from the canister, potentially toward consumers or others; that the contents of the canister would blended with such

intensity that it would heat, in a matter of seconds, to degrees capable of severely burning a human; or that overheated contents would explode out of the canister causing harm to a user or others in the vicinity.

196.    As a direct and proximate cause of this Defect, Plaintiff and Class Members suffered injury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the proposed Classes request that the Court enter a judgment awarding the following relief:

A.    An Order certifying this action as a class action;

B.    An Order appointing Plaintiff as class representative and appointing counsel undersigned to represent the Classes;

C.    A Declaration that the Class Blenders are defective;

D.    A Declaration that the Defects pose a serious safety risk to consumers and the public;

E.    An Order awarding injunctive relief requiring NutriBullet to issue corrective actions including notification, recall, and replacement of the Class Blenders.

F.    An Order awarding Plaintiff and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

G.    An order awarding Plaintiff and Class Members pre-judgment and post-

61

CLASS ACTION COMPLAINT

judgment interest as allowed under the law;

H.     An Order awarding Plaintiff and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

I.     An Order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury all issues so triable under the law.

CLASS ACTION COMPLAINT

DATED: July 2, 2018                  Respectfully submitted,

                                     */s/ Crystal Foley*
                                     Crystal Foley (SBN 224627)
                                     **SIMMONS HANLY CONROY LLC**
                                     100 N. Sepulveda Blvd., Suite 1350
                                     El Segundo, California 90245
                                     Telephone: (310) 322-3555
                                     Facsimile:  (310) 322-3655
                                     cfoley@simmonsfirm.co

                                     Paul J. Hanly, Jr.
                                     (*pro hac vice* to be submitted)
                                     Mitchell M. Breit
                                     (*pro hac vice* to be submitted)
                                     **SIMMONS HANLY CONROY LLC**
                                     112 Madison Avenue
                                     New York, New York 10016-7416
                                     Telephone:  (212) 784-6400
                                     Facsimile:  (212) 213-5949
                                     phanly@simmonsfirm.com
                                     mbreit@simmonsfirm.com

                                     Gregory F. Coleman
                                     (*pro hac vice* to be submitted)
                                     Mark E. Silvey
                                     (*pro hac vice* to be submitted)
                                     Adam A. Edwards
                                     (*pro hac vice* to be submitted)
                                     Lisa A. White
                                     (*pro hac vice* to be submitted)
                                     **GREG COLEMAN LAW PC**
                                     First Tennessee Plaza
                                     800 S. Gay Street, Suite 1100
                                     Knoxville, TN 37929
                                     Telephone:  (865) 247-0080
                                     Facsimile:  (865) 522-0049
                                     greg@gregcolemanlaw.com

CLASS ACTION COMPLAINT

mark@gregcolemanlaw.com
adam@gregcolemanlaw.com
lisa@gregcolemanlaw.com

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT